Counsel for the Commission of the Social Security Administration asserts that the administrative law judge properly evaluated the medical evidence and found that the only impairment that Mrs. Lotz had was possible bipolar disorder and that the medical records show that her sole focus was an attempt to obtain disability benefits and solve her housing problems. However, a review of the ALJ's decision and the medical records shows that the administrative law judge disregarded all of the mental status examination findings from Siskiyou County Mental Health, which shows that Mrs. Lotz had severe anxiety disorder and hopelessness. While it is true that Mrs. Lotz did seek help with these problems here from Siskiyou County Mental Health and that her counselor, Michelle Lindholm, and Dr. Pettis helped her with these problems, the public contends that they did so because, as the records show, her condition was rapidly deteriorating. That is, in November of 2000, she was initially evaluated for depression. This turned into severe anxiety and hopelessness during 2001. And by the end of 2001, she was suffering from psychosis. The last record, the last time she visited mental health was in January, early January of 2002, and she appeared to be unkempt and pale. One month later, she was dead from an overdose of antidepressant and pain medication. Appellant contends that the administrative law judge mischaracterized the medical evidence and the ALJ should be found to have misapplied the law when he failed to make any finding with regards to her severe anxiety disorder without explanation. Well, now, counsel, with respect to the bipolar point, wasn't there conflicting evidence and the ALJ credited Dr. Pappas? No, Your Honor. The administrative law judge believed that Dr. Pappas was not a treating physician because, as he said, she appeared to have only been prescribing medications every three months. But we contend that the administrative law judge did not properly apply the rules for evaluating and weighing the opinions of an accepted medical source. This is in 20 CFR Sections 404, 1527, and 41697. We contend that the medical evidence shows that Dr. Pappas participated as a member of a team that was treating Mrs. Lotz and that he should have used the criteria set forth in those regulations here for determining whether her treatment as a treating physician was according to accepted medical practice. We contend also that the administrative law judge erred when he failed to consider whether the combination of her depression, bipolar disorder, and her anxiety disorder equaled the listings. Counsel for the commissioner also asserts that the ALJ properly evaluated and discredited her allegations of subject to complaints on the grounds that she had exaggerated the severity of her physical impairments and her attempts to obtain disability benefits provided her with financial incentive to exaggerate. However, we again state that assert that the medical records, that mental status examinations clearly show that Mrs. Lotz suffered from severe depression and severe anxiety, which established that she had medically determinable impairments to account for her symptoms. More importantly, the administrative law judge disregarded Dr. Higgins-Lee's report in which she stated that she actually performed a procedure for determining malingering and found that Mrs. Pappas, that Mrs. Lotz was not in fact malingering. Appellant contends that in the absence of affirmative evidence of malingering, the administrative law judge should be found to have failed to set forth that his general reasons should be found to not constitute clear and convincing evidence to discredit her symptoms. Opposing counsel also asserts that the administrative law judge properly evaluated her residual functional capacity and determined that her only limitation was restricted to simple, unskilled work and that she had the capacity to perform her past work as a clerk cashier. The district court found that there was no error in the administrative law judge for ignoring Dr. Greenlee's determination that Mrs. Lotz's bipolar disorder prevented her from doing work that involved that she must perform work that did not require close peer and public contact. Appellant contends that since the administrative law judge relied upon Dr. Greenlee's finding and determined that she had a bipolar disorder, then the administrative law judge should be found to have erred in close contact in his residual functional capacity finding. With regards to past work, the administrative law judge found that two of Mrs. Lotz's past jobs were not performed at the substantial gainful level. This is work as a hand packager and as a fast food clerk. But he found that ---- Kennedy, would you take me through the findings of fact and any error you claim on prior work experience? Well ---- Limit yourself to the fact. The social administration had earlier determined that none of her jobs constituted substantial work. The district court found that that this may have been an error, at least with regards to her work as a clerk cashier. Is that sufficient to send this back, just per se? Because it's just a presumption that's raised, isn't it? That alone may not be sufficient to remand this case, Your Honor. But we would contend that ---- Well, what's the fact? I mean, it seems to me the factual record's a little bit screwed up, too. They don't necessarily use the right dates and duration versus amount and so on. It is unclear, Your Honor. As I point out in my brief here, there could be several ways ---- We're not here to make facts, are we? You certainly are not, Your Honor. Well, then don't we have to remand it? If the record is unclear, if the findings are not supported by the evidence of record, this case should be remanded, Your Honor. Why do you say this alone isn't enough to create a remand? We believe that there are other grounds for a remand, Your Honor. As far as this is ---- this particular issue is concerned ---- If it's a remand for reconsideration, then you've got a shot at it again, don't you? Yes, Your Honor. That's true. So you see a deficiency in the determination with respect to past relevant work and substantial gainful activity? Because neither the district court nor the ALJ presented any explanation why their opinions differed from the social commission's prior determination here. We contend that in the absence of any new evidence, then the substantial does not support the finding that she had past relevant work as a court cashier. Do you think it's possible that the ALJ misinterpreted the start date of 599 for 399? I believe that may have been the case, Your Honor. And as to the earnings determination ---- Telegraphing that to the other side to be thinking about it. As to the determination for earnings, that could affect whether she had substantial ---- whether she had gainful work activity here. Counsel, you're down to two and a half minutes. You indicated you wanted to reserve three, so your choice. Okay. I'll reserve, then, Your Honor. Thank you. We'll hear from the government. The Commissioner. Good morning, Your Honors. I'm Gerilyn Galseth, appearing for the Commissioner of Social Security. I just wanted to clarify a couple of points with respect to the ALJ's evaluation of Dr. Pappas's evaluation. The ALJ did not find that Dr. Pappas was not a treating source. The ALJ acknowledged that Dr. Pappas was in charge of the claimant's medication at Siskiyou County. The ALJ simply found that one factor that went to the reliability of the evaluation was the fact that it had been prepared by a counselor, Michelle Lindholm, who had actively taken the role of claimant's SSI advocate. Did she operate under the direct supervision of the physician, or was she an independent counselor? I think it would be fair to characterize. Do we know? There was one meeting where there was a treatment team meeting, and Dr. Pappas and Lindholm were involved. But all of Lindholm's contacts with claimants seemed to be centered around contacting the hearings office and social security and obtaining SSI benefits. With respect to the bipolar disorder, there was conflicting evidence in this record. I think, again, the ALJ was looking at this time period as a whole. The claimant alleged a disabling, well, first of all, she alleged a disabling back impairment and a disabling depression for several years, but there was absolutely no treatment until social security sent her to consultative examinations in May of 2000. And then it was about six months after that that the claimant finally sought treatment at Siskiyou in November of 2000. So, again, and both CEs, Dr. Greenleaf and Dr. Kagan's Lee found, made findings that were conflicting, independent findings from what Dr. Pappas would later claim were the findings that she recorded. How did the ALJ conclude that Lotsee's past relevant work as a clerk cashier was substantial gainful activity? In first of all, in terms of the social security claims representative finding, filling out a report and finding that some of her jobs were not substantial gainful activity, the ALJ had the right to review the record de novo. So it wasn't bound by those prior determinations. But on what ground did the ALJ come to that conclusion that's different? Well, even if, in terms of the March or the... You see there's a mistake? Even if? No. Well, explain this then. I mean, because there seems to be some confusion here between May and March and arithmetic. Right. Presumptive levels. The claimant worked for a campground for about five months. According to her report on transcript page 115, she worked as a reservations clerk from June 1999 to October 1999. Well, she says November 1, 1999. So that would be five months. And usually social security divides the number of months by the amount earned. She earned $3,877. And that would come to a little over $600 a month for that five-month period. The way she described her job, it sounded as if she did cashier duties. She did operate a cashier on that. Well, it seems that the calculation of income falls below presumptive levels. It may have — well, not prior to June 1999 or July 1999. And even if it did fall under presumptive levels, that doesn't mean that it's not substantial gainful activity. It would just mean that the ALJ could look at other factors to determine whether, you know, she was able to perform this job. She's in the record to support anything additional. You say you can look at it, but where is it? In terms of — well, on — She didn't hold two jobs while she was holding the camp job, was she? I don't believe so, although it's a little — It's a little unclear whether she also worked at a pizza restaurant during that time period as well. Well, the district court in footnote 5 mucks around in this a little bit and then says in any event, because the ALJ's alternatively — the ALJ alternatively found plaintiff not disabled under the grids, plaintiff's point is moot. Would you agree with that? Yes. Then how do you work the grids in this case? Because it seems to me that if a claimant carries her burden of showing she's unable to perform past relevant work, the burden shifts to the commissioner to show that she can adjust to other work, and the commissioner can either use a vocational expert or the grids, but it seems the grids deal with physical exertion and not the kind of problems we're dealing with in this case. So why was it appropriate to even look to the grids? Well, the ALJ, in my understanding, may not be able to rely on the grids if a claimant suffers only non-exertional limitations. We have some cases that so indicate. He can use the guidelines as — I mean, he can use the grid as a guideline to direct a finding of not disabled. How does that work if the grids have nothing to do with non-exertional limitations? If the grid describes thousands or administratively notices thousands of unskilled jobs at different exertional levels, if a claimant... Exertional levels, and we're dealing with somebody here who's not inside that category. But if VE is only necessary if an ALJ finds that the claimant's non-exertional limitations significantly affect that person's ability to perform or otherwise perform the strength duties of a job. For instance, I think it was Des Rosiers v. Secretary that found the ALJ in the first instance makes the determination whether a claimant's non-exertional limitations, non-strength limitations are significant, thereby precluding use of the grid. Then you turn to the vocational expert to determine whether there are remaining jobs. And it's the Commissioner's contention that the grids by themselves identify unskilled jobs. The mental demands of unskilled jobs require an ability to perform on a sustained basis, simple instructions, relate appropriately to coworkers and supervisors, and adapt to routine changes. With respect to Dr. Greenleaf's concern that the claimant should have little peer or public contact, the Commissioner has also noted that the bulk of unskilled jobs involves working with things, like stocking things or assembling things, rather than interaction on a sustained basis. There are no exertional limitations. Is that what you're saying? There are exertional limitations in this case, but the ALJ found that they were not significant enough to affect her ability to otherwise perform work, the unskilled work that's identified by the medical vocational rules. Your argument assumes that the ALJ was correct up until the point that the ALJ relied or started looking at the grids. That the ALJ was correct, yes. And the claimant did not, just to clarify, she did not necessarily show that she could not perform her past relevant work. It's just that if this Court were to find that there were not, was not sufficient evidence to support the ALJ's finding that her past relevant, that her past work was past relevant work because it was not performed at substantial gainful levels, as this Court noted, the burden of proof would shift to the Commissioner, and the Commissioner satisfied her burden of proof here by pointing to numerous unskilled jobs noticed by the medical vocational rules that she could perform. Have you read our new Lounsbury case, L-O-U-N-S-B-E-R-R-Y? Yes. And what does that seem to suggest? Because it deals with grids and exertional and non-exertional limitations. And as far as I can tell, the Lounsbury case, which is maybe too new to rely on, suggests that you simply can't use these grids when a claimant suffers only non-exertional limitations. The ALJ must rely on other evidence. I read Lounsbury to apply to older workers who were restricted to light work, and, therefore, the Commissioner had to identify a significant range of light work that they could perform, that their skills could transfer to. In that case, the Ninth Circuit found that the ALJ's reliance on one occupation that existed in significant numbers was not sufficient, because the Commissioner in her vocational rules had added an additional rule, if you will, to favor older workers. That is, as the worker gets older, that the Commissioner bears a burden of showing that they can transfer their skills to a wide range of work. So I think Lounsbury is distinguishable in that, in this case, we're certainly not dealing with an older worker. Thank you, Counsel.  Mr. Johnson, you have a little reserve of time. Thank you, Your Honor. And an issue that I wasn't able to get to before, but I think is really important in this case here, is how to evaluate and weigh the opinion of the Counselor, Ms. Michelle Lindholm, that Mr. Alonzo said that she was not an acceptable medical source. We agree, she's not, but we contend that her opinion should have been evaluated as other medical evidence. This Court has never really directly considered that issue. It was mentioned in passing in the Benton case, but in the Benton case, the prime issue was how to evaluate and weigh the opinion of an accepted medical source, and in that case, the nurse practitioner gave her opinion and findings to the physician who wrote the report, whereas in this case, we agree that Mrs. Lindholm wrote the report. The Social Security Administration has recently published a ruling, 063P, in the Federal Register in August of this year, which states that up until that time, there were no standards for evaluating and weighing the opinions of other medical sources, but that from then on, the same acceptable medical sources, treating physicians, that is, sections 404, 1527, 416, 927, were to be applied to evaluate opinions from other medical sources. Well, would she be another medical source? She's considered to be another medical source. She's a counselor or a physician's assistant or a nurse practitioner. As the ruling mentions, this is really important because more and more physicians and clinics are relying upon physician's assistants to evaluate and even treat patients here, and so their opinions have to be evaluated. Now, is that clear from the regs, or is that a logical inference? It's not clear from the regulations, Your Honor. It just says that other medical sources in the regulations can include nurse practitioners, chiropractors, these kinds of people, which Social Security has always basically rejected as being not an acceptable medical source, not competent medical opinion here. Usually they do it with chiropractors here. But in this case, there was a nurse practitioner in the Benton case or a counselor in this case, and usually they're just rejected out of hand, as happened in this case. The judge says that she was a social worker. She was not a competent medical source of information. And this, we consider this an important case here, and using those rules just in the regulations that Mrs. Lindholm's opinion, as set out in the 2102 report here, should have been given full weight here, because the records show that she was Mrs. Lotz's treating counselor. Her opinion that she had such severe anxiety that would prevent her from being able to deal with work stresses is consistent with the records, and her opinion was supported and endorsed by Dr. Pappas. Let's go back to a question asked by Judge Beeser earlier. Was she working under the direct supervision of Dr. Pappas? It would appear that was the case, Your Honor. There was only one staff psychiatrist at Siskiyou County Mental Health. That was Dr. Lynn Pappas, and she directed the team and all the counselors. It's not really clear from the records. What is clear is that Lynn, Lindholm, Mrs. Lindholm was Mrs. Lotz's regular physician, and there was this one time when they had a conference together using the team approach. Thank you, counsel. Okay. Thank you, Your Honor. Your time has expired. The case just argued will be submitted.
judges: Beezer, O'scannlain, Trott